# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

| | | |
|---|---|---|
| Brian Keith Uzzle,<br>    Petitioner, | ) | |
| | ) | |
| v. | ) | 1:16cv473 (JCC/IDD) |
| | ) | |
| Lesley Fleming,<br>    Respondent.[1] | ) | |

## MEMORANDUM OPINION

Brian Keith Uzzle, a Virginia inmate proceeding pro se, has filed a petition for a writ of

habeas corpus pursuant to 28 U.S.C. §2254, challenging his conviction of murder and use of a

firearm in the commission of a murder following a jury trial in the Chesterfield County Circuit

Court. For the reasons which follow, respondent's Motion to Dismiss the petition will be

granted.

## I. Background

The Court of Appeals of Virginia described the facts underlying petitioner's convictions

as follow:

> [T]he evidence proved that on the evening of August 28, 2011,
> Michael Flowers and Artemus Taylor saw Montique Fitzgerald in the
> neighborhood. Flowers, Taylor and Fitzgerald went to Flowers'
> house. Gerald Everett joined them in the backyard of Flowers' house.
> The four of them were talking, and some were drinking. Appellant,
> who lived behind Flowers, and Mike Pope walked over to Flowers'
> house. Appellant greeted everybody. Fitzgerald was on the steps and
> came down to speak with appellant. Appellant and Fitzgerald started
> arguing about a telephone conversation. According to one witness,
> "[t]hey were kind of squared off," but neither hit nor swung at each

---

[1] Respondent's surname is spelled alternately as both "Fleming" and "Flemming" in her Brief in
Support of ... Motion to Dismiss. The Court has chosen to use the former in this Memorandum
Opinion.

other. Appellant backed up and pulled a gun from his waistband. He first fired at the ground. Then, he shot Fitzgerald four times, got on top of him, and hit him on his head with the gun. Appellant said to the others, "Don't tell them," and ran from the scene.

Uzzle v. Commonwealth, R. No. 2246-12-2 (Va. Ct. App. June 13, 2013), slip op. at 6-7; Pet. Att. 13.[2]

Uzzle was tried to a jury in May, 2012, and was convicted of the offenses he challenges here. He was sentenced to serve a total of thirty years in prison. Id., slip op. at 1.

Uzzle filed a direct appeal of the convictions and raised the following claims:

1.  The trial court erred in admitting tainted eyewitness identification testimony that was obtained under impermissibly suggestive circumstances and carried a substantial likelihood of misidentification.

2.  The trial court erred by refusing to grant a cautionary instruction on the issue of eyewitness identification testimony obtained under suggestive circumstances.

3.  The trial court erred by refusing to grant a cautionary instruction on cross-racial eyewitness identification.

4.  There was insufficient evidence to prove his identity as the person who committed the crimes.

5.  There was insufficient evidence to prove first-degree murder because it did not establish that the killing was willful, premeditated and deliberate.

6.  His statutory right to a speedy trial was violated.

7.  His constitutional right to a speedy trial was violated.

8.  The trial court abused its discretion by granting the Commonwealth's motion to *nolle prosequi* the

_____

[2]Because a federal court on habeas review of a state conviction must defer to findings of fact made by state trial and appellate courts, 28 U.S.C. § 2254(d), it is appropriate to look to the state court's recitation of the salient facts.

charges because it was done without good cause and to avoid a speedy trial claim.

9.     The trial court erred in not allowing petitioner to cross-examine Flowers about his involvement in a controlled drug buy.

10.     The trial court erred in denying him a new trial when he was deprived of a meaningful opportunity to correct the trial transcript.

A single judge of the Court of Appeals denied Uzzle's petition for appeal on June 13, 2013. Id. A three-judge panel of that Court also refused the appeal on August 26, 2013. The Supreme Court of Virginia refused further review on March 31, 2014, Uzzle v. Commonwealth, R. No, 131630 (Va. Mar. 31, 2014), and denied petitioner's motion for rehearing of that decision on June 13, 2014.

On June 8, 2015, Uzzle timely filed a pro se petition for a state writ of habeas corpus, in which he made the following claims:

1.     His rights under the Fourteenth Amendment and Va. Code § 18.2-32 were violated because the evidence was insufficient to prove first degree murder.

2.     He was denied due process when the trial court refused him a meaningful opportunity to correct his trial transcript due to the destruction of the court reporter's original shorthand notes and audio recordings.

3.     He was denied his rights to due process and a fair and impartial jury when the trial court refused to dismiss or properly question a juror about bias after the juror disclosed that his wife worked with one of the Commonwealth's witnesses.

4.     He was denied due process when the court admitted evidence regarding an unduly suggestive identification.

5.     Counsel provided ineffective assistance by:

a.    failing to move to suppress or to challenge the chain of custody of the Newport cigarette butt;

b.    failing to inspect the cigarette butt;

c.    failing to properly cross-examine the forensics investigator about the cigarette butt;

d.    failing to object to demonstrative photographs use during a firearms analyst's testimony;

e.    failing to include law and authority in the motion to correct the trial transcript;

f.    failing to request an expert witness as to eyewitness identification testimony;

g.    failing to file a timely discovery motion;

h.    failing to review and submit police recordings;

i.    failing to move for a mistrial or to properly cross-examine the lead detective;

j.    failing to object to false and misleading statements during the prosecutor's closing argument;

k.    failing to object to questions by the prosecutor about a text message;

l.    failing to object to the prosecutor's cross-examination of the petitioner regarding his prior convictions or to inform petitioner of his rights under Va. Code § 19.1-269;

4

m.     failing to question and strike a juror whose wife worked with a Commonwealth witness; and

o.     failing to argue prejudice in the speedy trial motion and its appeal.

6. He was the victim of prosecutorial conduct where:

a.     the prosecutor referred to the crime as an execution and the petitioner as an executioner;

b.     the prosecutor made false statements in his argument;

c.     the prosecutor improperly questioned petitioner regarding his prior drug sales;

d.     the prosecutor cross-examined petitioner regarding a text message without offering the text or the phone into evidence;

e.     the prosecutor argued that petitioner murdered the victim to settle a score; and

f.     the prosecution "let [the] trial proceed" after a juror said his wife worked with a witness without questioning the juror regarding bias when instead the "prosecution should have declare[d] a mistrial."

7.     The court abused its discretion by granting the Commonwealth's motion to *nolle prosequi* the original charges.

8.     He was denied his statutory and constitutional rights to a speedy trial.

9.     He was denied his Sixth Amendment right to cross examine a witness against him.

On March 1, 2016, the Supreme Court of Virginia granted the Commonwealth's motion to dismiss petitioner's habeas corpus application. Uzzle v. Fleming, R. No. 150889 (Va. Mar. 1,

2016); Resp. Ex. A.

Petitioner then turned to the federal forum and timely filed this application for habeas

corpus relief pursuant to § 2254 on April 15, 2016.[3] In it, he raises an amalgamation of the

claims he previously presented to the Supreme Court of Virginia on direct appeal and in his state

habeas proceeding, as follow:

1.    His right to due process was violated because there was insufficient evidence to prove first-degree murder because it did not establish that the killing was willful, premeditated and deliberate.

2.    His constitutional right to a speedy trial was violated when the Commonwealth *nolle prossed* the original indictments and reindicted him while he remained jailed;

3.    His right to a speedy trial as guaranteed by Va. Code § 19.2-243 was violated;

4.    His Sixth Amendment right to confrontation was violated when he was not allowed to cross-examine Michael Flowers about his involvement in a controlled drug buy.

5.    He received ineffective assistance of counsel for the same 15 reasons enumerated in his state habeas corpus petition.

6.    He was the victim of prosecutorial misconduct for 5 of the reasons enumerated in his state habeas corpus petition.

7.    His right to due process was violated when the trial court erred in refusing to grant him a new trial when

---

[3]For federal purposes, a pleading submitted by an incarcerated litigant is deemed filed when it is delivered to prison officials for mailing. Houston v. Lack, 487 U.S. 266 (1988); Lewis v. City of Richmond Police Dep't, 947 F.2d 733 (4th Cir. 1991)  Here, Uzzle certified  that he placed his petition in the prison mailing system on April 15, 2016, Pet. at 45, and it was date-stamped as received by the Clerk on April 26, 2016.  Pet. at 1.

he was deprived of a meaningful opportunity to correct the trial transcript.

8.     His right to due process was violated when the trial court admitted tainted eyewitness identification testimony that was obtained under impermissibly suggestive circumstances and carried a substantial likelihood of misidentification.

9.     He was denied his rights to due process and a fair and impartial jury when the trial court refused to dismiss or properly question a juror about bias after the juror disclosed that his wife worked with one of the Commonwealth's witnesses.

On October 31, 2016, respondent filed a Motion to Dismiss the petition, along with a Motion for Leave to File Excess Pages and a supporting brief and exhibits. [Dkt. No. 10 -13] Respondent provided Uzzle with the notice required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(J) [Dkt. No. 14], and after receiving an extension of time Uzzle filed his opposition on December 28, 2016. [Dkt. No. 21] Accordingly, this matter is now ripe for disposition.

## II. Exhaustion

Before bringing a federal habeas petition, a state prisoner must first exhaust his claims in the appropriate state court. Title 28 U.S.C. § 2254(b); Granberry v Greer, 481 U.S. 129 (1987); Rose v. Lundy, 455 U.S. 509 (1982). To comply with the exhaustion requirement, a petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Thus, a petitioner convicted in Virginia first must have presented the same factual and legal claims raised in his federal habeas corpus application to the Supreme Court of Virginia on direct appeal or in a state habeas corpus petition. See, e.g., Duncan v. Henry, 513 U.S. 364 (1995). The exhaustion requirement has been satisfied as to most of

petitioner's claims.[4]

### III. Procedural Bar

Claims 6 and 9 of this petition, in which Uzzle argues that he was the victim of prosecutorial misconduct and that a juror was not impartial, are procedurally defaulted from consideration on the merits. In both instances, the Supreme Court of Virginia on state habeas review determined pursuant to Slayton v. Parrigan, 215 Va. 27, 205 S.E.2d 680 (1974) that these non-jurisdictional issues could have been raised at trial and on direct appeal and therefore were not cognizable in a habeas proceeding. Uzzle v. Fleming, supra, slip op. at 2, 13-14. On federal habeas corpus review, § 2254(d) mandates that a state court's finding of procedural default be presumed correct, provided that the state court relied explicitly on the procedural ground to deny petitioner relief and that the rule relied on is an independent and adequate state ground for denying relief. Ford v. Georgia, 498 U.S. 411, 423-24 (1991). The Fourth Circuit has consistently held that "the procedural default rule set forth in Slayton constitutes an adequate and independent state law ground for decision." Mu'min v. Pruett, 125 F.3d 192, 196-97 (4th Cir. 1997). Therefore, the Virginia court's express finding that Slayton barred review of Claims 6 and 9 of this petition also precludes federal review of those claims.

A federal court may not review a procedurally barred claim absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. Harris v. Reed, 489 U.S. 255, 262 (1989). In his reply, petitioner argues that the defaults of claims 6 and 9 were the result of ineffective assistance of counsel. Pet. Reply at 8. It is well established, however, that a claim of ineffective representation that has not itself been presented to and successfully exhausted in the state courts cannot serve as cause for the procedural default of additional claims.

---

[4]As will be seen infra, the only exception is Claim 4.

See Murray v. Carrier, 477 U.S. 478, 488-89 (1986); Justus v. Murray, 897 F.2d 709 (4th Cir. 1990).[5] As petitioner neither suggests nor offers evidence sufficient to establish that he is actually innocent of the offenses for which he was convicted, see Schlup v. Delo, 513 U.S. 298, 327 (1995); Royal v. Taylor, 188 F.3d 239, 244 (4th Cir. 1999), claims 6 and 9 of this petition are procedurally barred from federal consideration on the merits.

Claim 7 of this petition, where Uzzle argues that his right to due process was violated when the trial court denied him a meaningful opportunity to correct the trial transcript, also is procedurally defaulted for two reasons. When Uzzle argued on direct appeal that the trial court erred in denying him a new trial because he had had no opportunity to correct the trial transcript, the Virginia Court of Appeals expressly determined that the claim had not been not preserved for review. Uzzle v. Commonwealth, supra, slip op. at 14. In his state habeas corpus proceeding, Uzzle argued as he does here that his right to due process was violated by the trial court's ruling, and the Supreme Court of Virginia determined that the claim was "barred because a petition for a writ of habeas corpus may not be employed as a substitute for an appeal. Brooks v. Peterson, 210 Va. 318, 321-22, 171 S.E.2d 243, 246 (1969)." Uzzle v. Fleming, supra, slip op. at 1. These explicit determinations of procedural default by the state court are presumptively correct and constitutes an independent and adequate state ground for denying relief on the claim. Ford, 498 U.S. at 423-24. Accordingly, claim 7 is procedurally defaulted from consideration on the merits, unless petitioner can show cause and prejudice or a fundamental miscarriage of justice.[6]

---

[5]The "narrow exception" to the general rule of Coleman that was created by Martinez v. Ryan, ___ U.S. ___, 132 S.Ct. 1309 (2012) does not apply here, because the defaulted claims do not allege ineffective assistance of trial counsel. Fowler v. Joyner, 753 F.3d 446 (4th Cir. 2014).

[6]Because respondent did not argue that Claim 7 is procedurally defaulted, petitioner in deference to his pro se status is advised that he may present any argument he may wish to make regarding that issue in a timely-filed Motion for Reconsideration.

## IV. Merits Standard of Review

When a state court has addressed the merits of a claim raised in a federal habeas petition, a federal court may not grant the petition based on the claim unless the state court's adjudication is contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Whether a state court decision is "contrary to" or "an unreasonable application of" federal law requires an independent review of each standard. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court's determination runs afoul of the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Id. at 413. Under the "unreasonable application" clause, the writ should be granted if the federal court finds that the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. This standard "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." Burt v. Titlow, __ U.S. __, 134 S. Ct. 10, 15 (2013). As a result, "[t]he focus of federal court review is now on the state court decision that previously addressed the claims rather than the petitioner's free-standing claims themselves." McLee v. Angelone, 967 F.Supp. 152, 156 (E.D. Va. 1997), appeal dismissed, 139 F.3d 891 (4th Cir. 1998) (table). The Supreme Court has recognized that the § 2254(d) standard of review "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" because it requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error ... beyond any possibility for fairminded disagreement." Burt,

134 S. Ct. at 16, citing Harrington v. Richter, 562 U.S. ⎯⎯, ⎯⎯, 131 S.Ct. 770, 786-787, 178 L. Ed.2d 624 (2011). "If this standard is difficult to meet - and it is - that is because it was meant to be." Id., 131 S.Ct. at 786.

## IV. Analysis

Claim 1:

In his first federal claim, Uzzle argues that the evidence was insufficient to sustain the conviction of first-degree murder because there was no showing that the killing was willful, premeditated and deliberate. On federal habeas review, the standard for a claim challenging the sufficiency of the evidence supporting a state conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis original). The federal court is required to give deference to findings of fact made by the state courts, and this presumption of correctness applies to facts found by both trial and appellate courts. 28 U.S.C. § 2254(d); Sumner v. Mata, 449 U.S. 539, 546-47 (1981); Wilson v. Greene, 155 F.3d 396, 405-06 (4th Cir. 1998) (citing Wright v. West, 505 U.S. 277, 292 (1992) for the holding that a federal habeas court is prohibited from either "consider[ing] anew the jury's guilt determination or "replac[ing] the state's system of direct appellate review"). Instead, the federal court must determine only whether the trier of fact made a rational decision to convict. Herrera v. Collins, 506 U.S. 390, 402 (1993).

When Uzzle made his present argument on direct appeal, the Court of Appeals of Virginia rejected it on the following holding:

> First-degree murder is "any willful, deliberate and premeditated killing." Code § 18.2-32. Malice is "an essential element of all grades of murder." Rhodes v. Commonwealth, 238 Va. 480, 485, 384 S.E. 2d 95, 98 (1989) (citation omitted).

Whether or not an accused acted with malice is generally a question of fact and may be proved by circumstantial evidence." Canipe v. Commonwealth, 25 Va. App. 629, 642, 491 S.E.2d 747, 753 (1997).

> Malice inheres in the intentional doing of a wrongful act without legal justification or excuse. Malice is not confined to ill will, but includes any action flowing from a wicked or corrupt motive, done with an evil mind or wrongful intention, where the act has been attended with such circumstances as to carry in it the plain indication of a heart deliberately bent on mischief.

Williams v. Commonwealth, 13 Va. App. 393, 398, 412 S.E.2d 202, 205 (1991).

> "The intention to kill need not exist for any specified length of time prior to the actual killing; the design to kill may be formed only a moment before the fatal act is committed provided the accused had time to think and did intend to kill."

Remington v. Commonwealth, 262 Va. 333, 352, 551 S.E.2d 620, 632 (2001) (quoting Weeks v. Commonwealth, 248 Va. 460, 477, 450 S.E. 2d 379, 390 (1994), cert. denied, 516 U.S. 829 (1995)). omitted).

Appellant contends the Commonwealth did not prove that he acted deliberately or with premeditation. He points to the fact that there was no evidence that he knew Fitzgerald would be at Flowers' house because it was an impromptu gathering of friends. Appellant did not come to Flowers' house waving a gun, and there was no indication that he intended to harm Fitzgerald. He contends the evidence was they exchanged words and were "squared off" as if to fight. The first shot was shot into the ground, and not at Fitzgerald. Lastly, appellant points to his lack of an exit strategy to argue that the shooting was done in the heat of passion.

However, appellant ignores the fact that he brought a concealed gun to the gathering. He shot Fitzgerald four or five times at close range. [FN]

> [FN] The testimony was that they were only a few feet from one another.

> After appellant shot Fitzgerald, he got on top of Fitzgerald and hit him in his head with the gun. Then, appellant ran away and eventually was caught in North Carolina.
>
> In Kirby v. Commonwealth, 50 Va. App. 691, 701-02, 653 S.E.2d 600, 605 (2007) (citations omitted), the Court listed several circumstances that would be evidence of premeditation and first-degree murder, including shooting someone at close range, shooting someone multiple times, and "deliberate use of a deadly weapon." All of these circumstances apply to this case.
>
> Based on the record, the evidence was sufficient to prove beyond a reasonable doubt that appellant was guilty of first-degree murder.

Uzzle v. Commonwealth, supra, slip op. at 8-9. Because the Supreme Court of Virginia refused further review of the foregoing opinion without explanation, the reasoning of the Court of Appeals is imputed to it. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

Here, for the reasons expressed in the Court of Appeals' opinion, it is apparent that a rational trier of fact could have found Uzzle guilty of first degree murder as that crime is defined in Virginia. See Jackson, 443 U.S. at 319. Therefore, the state courts' denial of relief on this claim was neither contrary to, nor an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts, and the same result accordingly is compelled here. Williams, 529 U.S. at 412-13.

Claims 2 and 3:

In his second and third claims, Uzzle argues that his right to a speedy trial was violated in two respects. In claim 2, he asserts that his federal constitutional right to a speedy trial was violated when the Commonwealth *nolle prossed* the original indictments and reindicted him while he remained jailed. The Virginia courts found no merit to this contention for the following reasons:

> Appellant was arrested on September 12, 2011, and his preliminary

hearing was held on October 25, 2011. On March 12, 2012, the trial court granted the Commonwealth's motion to *nolle prosequi* the charges. On March 19, 2012, the Commonwealth re-indicted appellant on the charges, and the trial was held on May 30 and 31, 2012. Appellant was held in custody continuously from his arrest until trial. After the Commonwealth *nolle prosequied* the charges, appellant remained incarcerated on a probation violation charge. ...

\* \* \*

Appellant also contends his constitutional right to a speedy trial was violated.

> In Barker v. Wingo, 407 U.S. 514 (1972), the United States Supreme Court listed four factors that are to be weighed in determining whether an accused has been deprived of his Sixth Amendment right to a speedy trial. These factors are the length of the delay, the reason for the delay, whether the defendant has asserted his right, and the prejudice to he accused from the delay. Id. at 530.

[Harris v. Commonwealth, 258 Va. 576] at 585-56, 520 S.E.2d at 830 [1999].

"[T]here is no requirement that prejudice be established, but evidence relating to these factors is considered, together with any other circumstances as may be relevant, and balanced in determining whether a constitutional violation has occurred." Howard v. Commonwealth, 281 Va. 455, 462, 706 S.E.2d 885, 889 (2011) (citing Moore v. Arizona, 414 U.S. 25, 26 (1973)).

The length of delay from the indictments to the trial was approximately three months. The length of time since the shooting was approximately nine months. Appellant objected to the Commonwealth's motion to *nolle prosequi* the original charges; however, the trial court found there was good cause. The Commonwealth brought the new indictments one week after the motion to *nolle prosequi*. There was no prejudice to appellant in having the trial in May 2012. Contrary to appellant's argument, there was no "inordinate" delay.

Uzzle v. Commonwealth, supra, slip op. at 11 - 12.

14

Under the Sixth Amendment, defendants accused of crimes enjoy "the right to a speedy and public trial," U. S. Const. amend VI, and the Fourteenth Amendment extends this right to criminal trials in state court. Klopfer v. North Carolina, 386 U.S. 213 (1967). In Barker, supra, the Supreme Court adopted a four-factor balancing test to be used in evaluating speedy trial violation claims under the Sixth Amendment: 1) the length of the delay; 2) the reason for the delay; 3) whether the defendant timely asserted the right to a speedy trial; and 4) whether the defendant suffered prejudice as a result of the delay. 407 U.S. 514, 530-32 (1972). Under this test, a petitioner must show "that on balance, the four separate factors weigh in his favor." United States v. Thomas, 55 F.3d 144, 148 (4th Cir. 1995). Here, as the Court of Appeals found, Uzzle has made no showing that he suffered any real prejudice as the result of the nine months that passed between the shooting and his trial, such as might have occurred if, for example, the delay caused a key witness to become unavailable. Without such a showing, a claim for denial of the right to a speedy trial fails. See Reed v. Farley, 512 U.S. 339, 353 (1994) ("A showing of prejudice is required to establish a violation of the Sixth Amendment Speedy Trial Clause....") Therefore, the Virginia courts' denial of relief on this claim was neither contrary to, nor an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts, and the same result accordingly must be reached here. Williams, 529 U.S. at 412-13.

In claim 3, Uzzle contends that his right to a speedy trial as guaranteed by Va. Code § 19.2-243 also was violated by the foregoing circumstances. Even if true, such an argument states no claim for §2254 relief because it is not a claim of federal constitutional dimension. "A state prisoner is entitled to relief under § 2254 only if he is held 'in custody in violation of the Constitution or laws or treaties of the United States.'" Billotti v. Legursky, 975 F.2d 113, 119

(4th Cir. 1992) (quoting <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982)). Thus, questions of state law that do not implicate federal rights are not cognizable on federal habeas review under § 2254. <u>Id.</u> (citing <u>Inge v. Procunier</u>, 758 F.2d 1010, 1014 (4th Cir. 1985)); <u>see also</u>, <u>Larry v. Branker</u>, 552 F.3d 356, 368 (4th Cir.), <u>cert. denied</u>, 130 S.Ct. 408 (2009)(holding that an argument that rests solely on interpretation of a state statute "is simply not cognizable on federal habeas review.") Accordingly, even if Uzzle's state-created right to a speedy trial had been violated, it would not entitle him to § 2254 relief.

Claim 4:

In his fourth claim, Uzzle asserts that his right to confrontation was violated when the court granted the Commonwealth's motion *in limine* to prevent defense counsel from questioning Michael Flowers, a witness to the shooting, regarding "unadjudicated felony conduct." This argument was rejected on direct appeal on the following holding:

> At the hearing on May 30, 2012, the Commonwealth argued a motion *in limine* to prevent appellant from questioning Flowers about an unadjudicated event. The Commonwealth informed the trial court that Flowers was involved in a controlled drug buy when a confidential informant purchased marijuana from Flowers. As of May 30, 2012, Flowers had not been arrested. Appellant argued that he wanted the opportunity to question Flowers about the incident in order to "discredit" him. The trial court sustained the motion because "specific bad acts are not admissible in evidence to impeach one's credibility."
>
> "The scope of cross-examination in general, and the extent of testimonial impeachment in particular, are left to the sound discretion of the trial court and are not subject to review unless plainly abused." <u>Scott v. Commonwealth</u>, 18 Va. 692, 693-94, 446 S.E.2d 619, 619 (1994) (citations omitted).
>
> "An accused has a right to cross-examine prosecution witnesses to show bias or motivation[,] and that right, when not abused, is absolute. The right emanates from the constitutional right to confront one's accusers." <u>Brown v. Commonwealth</u>, 246 Va. 460, 463-64,

16

437 S. E.2d 563, 564-65 (1993)). "Evidence of specific acts of misconduct is generally not admissible in Virginia to impeach a witness' credibility." Banks v. Commonwealth, 16 Va. App., 959, 962, 434 S.E.2d 681, 683 (1993) (citing Clark v. Commonwealth, 202 Va. 787, 789-90, 120 S.E.2d 270, 272 (1961)).

Here, appellant argued that he wanted to cross-examine Flowers about the unadjudicated acts because "that information would be something that would discredit him and would be relevant for he jury, Judge." He continued, "So Judge, I think it is potentially relevant on his credibility ...."

As noted in Banks, "'Attempting to introduce evidence of prior misconduct, for which there has been no criminal conviction, to impeach a witness' general character for truthfulness differs from attempting to introduce such evidence to show that a witness is biased or motivated by self interest in a particular case." Id. at 963, 434 S.E. 2d at 683-84 (quoting Commonwealth v. Shands, 480 A.2d 973, 976 (Pa. Super. Ct. 1985).

The trial court did not err in sustaining the motion *in limine* because appellant intended to introduce the evidence to impeach Flowers, which we previously have held is inadmissible.

Uzzle v. Commonwealth, supra, slip op. at 13-14.

As a threshold matter, it appears that the argument petitioner makes here - that his constitutional right to confront witnesses was violated by the denial of the motion *in limine* - was not exhausted in the state forum. A federal habeas claim is exhausted only when both the same legal argument and the same supporting facts were presented to and ruled on by the highest state court. Anderson v. Harless, 459 U.S. 4, 6-7 (1982); see Pruett v. Thompson, 771 F. Supp. 1428, 1436 (E.D. Va. 1991), aff'd, 996 F.2d 1560 (4th Cir. 1993) (exhaustion is satisfied only where the "essential legal theories and factual allegations advanced in federal court ... [are] the same as those advanced at least once to the highest state court.") Here, it appears that Uzzle presented the instant claim to the state courts as an error of state law rather than, as he does here, one of constitutional dimension. The Virginia court's passing reference in its discussion to the fact that

17

the right to cross-examination "emanates from the constitutional right to confront one's accusers" falls short of transforming the issue that was considered in the state forum as the same one being argued here. See Mallory v. Smith, 27 F.3d 991, 995 (4th Cir. 1994) ("The exhaustion requirement demands that the petitioner 'do more than scatter some makeshift needles in the haystack of the state court record. The ground relied upon must be presented face-up and squarely.'") (quoting Martens v. Shannon, 836 F.2d 715, 717 (1st Cir. 1988)).

Nonetheless, § 2254(b)(2) now permits a federal court, in its discretion, to deny on the merits a habeas corpus claim despite the applicant's failure to exhaust available remedies in state court. See Swisher v. True, 325 F.3d 225, 232-33 (4th Cir.), cert. denied, 539 U.S. 971 (2003) (affirming district court's discretionary decision to elect to deny habeas corpus relief on the merits pursuant to § 2254(b)(2), although claim was "clearly unexhausted"). Here, because respondent does not challenge this claim as unexhausted and it is clearly without merit, the Court will exercise that discretion here and will deny the claim on the merits.

Petitioner fails to identify any facts which the state court determined unreasonably or relevant federal case law that the state court misapplied.[7] The Supreme Court has recognized that "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on ... cross-examination...." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). Here, for the reasons which were clearly explained by the Virginia Court of Appeals, the trial court did not abuse that discretion in sustaining the motion *in limine*, and petitioner has

---

[7]Uzzle's citation to Pointer v. Texas, 380 U.S. 400 (1965) is factually inapposite because it involved the use in a criminal case of the transcript of testimony given at a preliminary hearing where the defendant was not represented by counsel. Similarly, his reference to Davis v. Alaska, 415 U.S. 308 (1974) misses the mark, because it involved the refusal to allow the defendant to cross-examine a key prosecution witness to show his probation status and explore his motive to lie; here, on the other hand, the motion *in limine* concerned unadjudicated conduct of which Flowers did not yet know he was being accused.

18

made no showing that any of the concerns the Confrontation Clause is intended to vindicate were compromised by that ruling. Accordingly, the Virginia courts' denial of relief on this claim was neither contrary to, nor an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts, and its decision must not be disturbed here. Williams, 529 U.S. at 412-13.

Claim 5:

In his fifth, compound claim, Uzzle asserts that he received ineffective assistance of trial counsel for several reasons. To establish ineffective assistance of counsel, a petitioner must show that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defendant." Strickland v. Washington, 466 U.S. 668, 687 (1984). To prove that counsel's performance was deficient, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness" id. at 688, and that the "acts and omissions" of counsel were, in light of all the circumstances, "outside the range of professionally competent assistance." Id. at 690. Such a determination "must be highly deferential," with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also, Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000) (reviewing court "must be highly deferential in scrutinizing [counsel's] performance and must filter the distorting effects of hindsight from [its] analysis"); Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994) (court must "presume that challenged acts are likely the result of sound trial strategy.").

To satisfy Strickland's prejudice prong, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient

to undermine confidence in the outcome." Id.; accord, Lovitt v. True, 403 F.3d 171, 181 (4th Cir. 2005). The burden is on the petitioner to establish not merely that counsel's errors created the possibility of prejudice, but rather "that they worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimension." Murray v. Carrier, 477 U.S. 478, 494 (1986) (citations omitted, emphasis original). The two prongs of the Strickland test are "separate and distinct elements of an ineffective assistance claim," and a successful petitioner "must show both deficient performance and prejudice." Spencer, 18 F.3d at 233.

In claims 5(a) through 5(c), Uzzle contends that his lawyer provided ineffective assistance in three respects regarding a Newport cigarette butt found at the murder scene that contained Uzzle's DNA. In claim 5(a), Uzzle argues that his attorney should have moved to suppress the cigarette butt or challenged its chain of custody. On habeas review, however, the Supreme Court of Virginia disagreed:

> In claim (5)(A), petitioner contends he was denied the effective assistance of counsel because counsel did not challenge the chain of custody of a cigarette butt recovered from the crime scene, which was taken to the forensic laboratory almost a month after the rest of the physical evidence was submitted for analysis. Forensic testing of the cigarette butt revealed a mixture of DNA contributors. Petitioner could not be excluded as the major DNA contributor, and a profile of the minor contributor could not be developed.
>
> The Court holds that claim 5(A) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984). The record, including the trial transcript, demonstrates Sandra Simmons, a police forensic investigator, found the cigarette butt near the victim's body, collected it as crime scene evidence, and submitted it to the forensic laboratory. Theresa Francis, an analyst for the Department of Forensic Science, testified she received he cigarette butt from Simmons, tested it, and prepared a certificate of analysis with her findings. Under the circumstances, counsel could reasonably have determined any

> objection to the chain of custody would have been futile. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceedings would have been different.

Uzzle v. Fleming, supra, slip op. at 2.

For the reasons explained by the Supreme Court of Virginia, it is apparent that a challenge to chain of custody of the cigarette butt would have been futile, and it is well established in federal jurisprudence that an attorney has no duty to make meritless arguments or objections. Moody v. Polk, 408 F.3d 141, 151 (4th Cir. 2005) (citing Murray v. Maggio, 736 F. 2d 279, 283 (5th Cir. 1984)). Accordingly, the rejection of this claim by the Supreme Court of Virginia was both factually reasonable and in accord with applicable federal authority, and the same result is compelled here. Williams, 529 U.S. at 412-13.

In claim 5(b), Uzzle argues that he received ineffective assistance of counsel because counsel failed to open the package containing the cigarette butt to check its authenticity, even though none of the eyewitnesses to the shooting saw the cigarette butt on the night of the crime. The Supreme Court of Virginia rejected this argument, as follows:

> The Court holds that claim (5)(B) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates Simmons collected the cigarette butt from the crime scene, took a photograph of it that was admitted into evidence, and submitted the cigarette butt to the Department of Forensic Science, where Francis tested and repackaged it. At trial, the Commonwealth offered a standard evidence envelope, representing it contained the cigarette butt, and the evidence envelope was admitted as Commonwealth's exhibit 17. Under the circumstances, counsel could reasonably have determined there was no reason to open the evidence envelope. Furthermore, petitioner has not alleged the evidence envelope was empty, that the proffered envelope contained anything other than the cigarette butt Simmons and Francis described, or that counsel would have discovered information favorable to petitioner's defense had

counsel opened the envelope. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Uzzle v. Fleming, supra, slip op. at 3.

Under federal law, it is well settled that "an allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced." Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996); see also, Goins v. Warden, Perry Corr. Inst., 576 F. App'x 167, 173 (4th Cir. June 18, 2014). Because petitioner makes no such proffer here, the dismissal of this claim by the Supreme Court of Virginia was both factually reasonable and in accord with applicable federal authority, and the claim consequently must also be dismissed here. Williams, 529 U.S. at 412-13.

In claim 5(c), Uzzle contends that counsel rendered ineffective assistance by failing to cross-examine Simmons about why the cigarette butt was "not recorded with" other collected evidence, why it was sent to the laboratory later than other items of evidence, and who the minor DNA contributor was. The Supreme Court of Virginia found no merit to this assertion:

> The Court holds that claim (5)(C) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates Simmons, the forensic investigator, collected the cigarette butt from the crime scene and submitted it to the Department of Forensic Science for testing. Although petitioner suggests counsel should have asked Simmons why she submitted the cigarette butt a month after other evidence she collected from the crime scene or about a second DNA profile on the cigarette butt, petitioner fails to proffer how Simmons' responses to such questioning would have impugned the cigarette butt's chain of custody. Furthermore, counsel questioned Francis, the forensic analyst who tested the cigarette butt, about the results of her DNA testing. Francis acknowledged on cross-examination there was DNA from a "minor contributor" on the cigarette butt, but explained the limited amount of biological evidence from the minor contributor was "not suitable for

comparisons" and a full profile of that person could not be developed. To the extent petitioner alleges counsel should have asked Francis additional questions focusing on the identity of the minor contributor, petitioner fails to proffer Francis' potential responses. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Uzzle v. Fleming, supra, slip op. at 3 - 4.

As with claim (5)(b), Uzzle again fails to proffer what evidence would have been developed had counsel cross-examined the forensic examiner in the manner he now suggests. Cf. Beaver, 93 F.3d at 1195. Moreover, federal law recognizes that "'strategic choices made [by counsel] after thorough investigation ... are virtually unchallengeable....'" Gray v. Branker, 529 F.3d 220, 229 (4th Cir.), cert. denied, 129 S. Ct. 1579 (2009), quoting Strickland, 446 U.S. at 690-91. The manner of cross-examination is a just such a tactical choice that is left to the discretion of the attorney. Sallie v. North Carolina, 587 F.2d 636, 640 (4th Cir. 1978), cert. denied, 441 U.S. 911 (1979). The decision of the Supreme Court of Virginia with respect to claim 5(c) was in accord with these principles, and its result accordingly must be allowed to stand. Williams, 529 U.S. at 412-13.

In claim 5(d), Uzzle alleges that his lawyer provided ineffective assistance when he failed to object to the use of demonstrative photographs during a firearms analyst's testimony. The Supreme Court of Virginia found that this claim satisfied neither the "performance" nor the "prejudice" prong of Strickland because Uzzle "fail[ed] to articulate any basis for an objection or explain how the exhibits' admission was prejudicial," and that as result he failed to demonstrate either that counsel's performance was deficient or that there existed a reasonable probability that it affected the outcome of the proceeding. Uzzle v. Fleming, supra, slip op. at 4. Because that

holding was factually reasonable and in accord with applicable federal principles, Strickland, supra, the same result must be reached here. Williams, 529 U.S. at 412-13.[8]

In claim 5(e) Uzzle contends that his attorney provided ineffective assistance by failing to cite "any law or authority" to support the motion to correct the trial transcript. Petitioner alleges that the court reporter who transcribed his trial violated Va. Code § 19.2-165 by destroying her stenographic notes and audio recordings. However, counsel allegedly disregarded plaintiff's suggestion to rely on that provision, which in turn allegedly caused the trial court to deny the motion to correct the transcript and the Court of Appeals to refuse to consider this argument. The Supreme Court of Virginia found no merit to this contention, as follows:

> The Court holds that claim (5)(E) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Code § 19.2-165 requires a court reporter to file her original shorthand notes or other original records with the court, and provides that a transcript certified by the court reporter "shall be deemed prima facie a correct statement of the evidence and incidents of trial." The record, including the court reporter's affidavit and the transcripts of the trial and the hearing on petitioner's motion to correct, demonstrates that the court reporter filed her paper notes with the trial court, although she deleted her audio files once she completed the transcript. Counsel could reasonably have determined that was sufficient to comply with Code § 19.2-165. In addition, the court reporter certified the trial transcript was true and correct and the trial court confirmed the transcript's accuracy after thoroughly reviewing it. Furthermore, petitioner does not identify any specific omissions or inaccuracies from the challenged transcript. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for

---

[8]As respondent points out, Uzzle's attempt to cure the deficiency in claim 5(d) by offering in this federal proceeding an explanation of the prejudice he allegedly suffered as the result of the demonstrative evidence is unavailing. See Pet. Mem. at 25-27. Because the argument petitioner puts forth here has not been presented to the Supreme Court of Virginia, it is unexhausted and thus may not be considered. Pruett, 771 F.Supp. at 1436 (exhaustion requirement is satisfied only when "allegations advanced in federal court ... [are] the same as those advanced at least once to the highest state court.").

> counsel's alleged errors, the result of the proceedings would have
> been different.

Uzzle v. Fleming, supra, slip op. at 4-5.

As the Virginia court found, petitioner's claim 5(e) is predicated on a misunderstanding. Va. Code § 9.2-165 directs a court reporter to file "original shorthand notes or other original records with the clerk of circuit court." In this case the court reporter did so, and any attempt to by counsel to rely on § 9.2-165 to argue that the transcript was somehow inaccurate would have been futile, particularly since the trial court confirmed the transcript's accuracy after thoroughly reviewing it. Since an attorney has no duty to make meritless arguments or objections, Moody, 408 F.3d at 151, the state court's rejection of claim 5(e) was both factually reasonable and in accord with applicable federal authority, and the same result is compelled here. Williams, 529 U.S. at 412-13.

In claim 5(f), Uzzle faults his attorney for failing to move for the appointment of an expert in suggestive identification procedures and cross-racial identification. According to Uzzle, such an expert would have convinced the jury that the only witness who saw the shooter briefly from a distance misidentified Uzzle as the perpetrator. The Supreme Court of Virginia rejected this argument on the following holding:

> The Court holds that claim (5)(F) satisfies neither the "performance"
> nor the "prejudice" prong of the two-part test enunciated in
> Strickland. Petitioner has failed to proffer the names of any experts
> he contends counsel should have consulted and fails to proffer any
> expert affidavits to demonstrate what information these experts could
> have provided at trial. See Muhammad v. Warden, 274 Va. 3, 19,
> 646 S.E.2d 182, 195 (2007) (finding petitioner's failure to proffer the
> names and anticipated testimony of the experts he alleged counsel
> should have consulted was fatal to his ineffective assistance of
> counsel claim). Furthermore, the record, including the trial transcript,
> demonstrates that three eyewitnesses identified petitioner as the
> perpetrator. Thus, petitioner has failed to demonstrate that counsel's

> performance was deficient or that there is a reasonable probability
> that, but for counsel's alleged errors, the result of the proceedings
> would have been different.

Uzzle v. Fleming, supra, slip op. at 5.

The foregoing holding by the Virginia courts was both factually reasonable and in accord

with controlling federal principles. As with two of Uzzle's earlier claims of ineffective

assistance, he fails to proffer an affidavit from any potential expert as to what testimony he or she

could have offered; under federal law, that omission alone is fatal to his claim. Beaver, 93 F.3d

at 1195. Moreover, counsel sought unsuccessfully to exclude Moore's identification of petitioner

and to have the jury instructed on suggestivity and cross-racial identification. (T. 5/30/2012 at

4-42; T. 5/31/2012 at 177-82) Those rulings by the trial court were challenged and affirmed on

direct appeal. (T. 5/31/2012 at 2-6) Thus, petitioner could not have shown the "particularized

need" required in Virginia for the appointment of an expert to assist an indigent defendant. See

Commonwealth v. Sanchez, 597 S.E.2d 197, 199 (Va. 2004). Because the motion Uzzle now

suggests would have been futile, counsel cannot be found to have been ineffective for omitting it,

Moody, 408 F.3d at 151, and the state court's rejection of claim 5(f) must be allowed to stand.

Williams, 529 U.S. at 412-13.

In claim 5(g), Uzzle contends that he received ineffective assistance of counsel when his

lawyer failed to file a timely discovery motion. He asserts that the three eyewitnesses to the

shooting who identified him as the perpetrator - Michael Flowers, Gerald Everett, and Artemus

Taylor - made statements on the night of the murder that differed from their testimony at trial.

The Court of Appeals of Virginia rejected this argument for the following reasons:

> The Court holds that claim (5)(G) satisfies neither the "performance"
> nor the "prejudice" prong of the two-part test enunciated in
> Strickland. There is no general constitutional right to discovery in
> a criminal case, see Strickler v. Commonwealth, 241 Va. 482, 490-

26

91, 404 S.E.2d 226, 233 (1991), and petitioner failed to articulate any grounds upon which counsel could reasonably have argued the Commonwealth withheld evidence that was discoverable under the limited discovery permitted in criminal cases by Rule 3A:11. In addition, petitioner fails to state how the witnesses' trial testimony differed from their original statements or to demonstrate that had counsel known of the alleged discrepancies and used them to impeach the witnesses, the outcome of petitioner's trial would have been different. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceedings would have been different.

Uzzle v. Fleming, supra, slip op. at 6.

The Virginia courts' foregoing holding was both factually reasonable and in accord with controlling federal principles. As with several of Uzzle's earlier claims of ineffective assistance, his failure to proffer any information that could have been obtained through additional discovery and how such evidence would have affected his trial is fatal to his claim of ineffective assistance under federal law. Beaver, 93 F.3d at 1195. Therefore, the denial of relief by the Virginia courts cannot be disturbed in this proceeding. Williams, 529 U.S. at 412-13.

In claims 5(h) and 5(I), Uzzle argues that counsel provided ineffective assistance with respect to Detective Proffitt. In claim 5(h), Uzzle contends that counsel "failed to review and submit police recordings to the courts." Had he done so, according to Uzzle, it would have come to light that Detective Proffitt, who recorded interviews with eyewitnesses on the night of the murder, testified contrary to a police report that contained eyewitness statements. Specifically, according to petitioner, Proffitt in relying on his report that summarized Flowers' interview incorrectly stated that Flowers did not indicate that anyone approached Uzzle before the victim was killed. Uzzle asserts that counsel should have had Proffitt's audio recording of Flowers' interview "put on as evidence" to impeach Proffitt. The Virginia courts found no merit to this

position, as follows:

> The Court holds that claim (5)(H) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including transcripts of trial and of a post-trial hearing, demonstrates counsel initially intended to impeach Proffitt based on a prior inconsistent statement from the detective's report but then observed that the statement instead came from Officer Bernaldo's report. Counsel therefore explained at a post-trial hearing that he reasonably "elected not to cross-examine [Proffitt] with the suggestion that he had lied." Petitioner fails to show how the result would have been different had Proffitt's audio recording been reviewed by counsel, distributed to petitioner, or admitted into evidence. In addition, to the extent petitioner points to an unexplored theory of self-defense, petitioner incorrectly describes Proffitt's testimony. Counsel asked Proffitt whether Flowers said that anyone "approached with" petitioner, not whether anyone approached petitioner. Thus, petitioner has failed to demonstrte that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceedings would have been different.

Uzzle v. Fleming, supra, slip op. at 6-7.

As with claim 5(b), the foregoing determination by the Virginia courts was both factually reasonable and in accord with the settled federal principle that strategic decisions by counsel in general, and those concerning the manner of cross-examination in particular, will not support a claim of ineffective assistance. Gray, 529 F.3d at 229; Sallie, 587 F.2d at 640. Accordingly, the dismissal of claim 5(h) must be allowed to stand. Williams, 529 U.S. at 412-13.

In claim 5(I), Uzzle argues that he received ineffective assistance when his attorney failed to attempt to correct Detective Proffitt's allegedly false testimony or to move for a mistrial. The Supreme Court of Virginia found no merit to this contention for the following reasons:

> The Court holds that claim (5)(I) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates counsel determined what he initially believed was Proffitt's prior inconsistent statement instead was from Officer Bernaldo's report.

> Under the circumstances, counsel could reasonably have determined attempting to correct Proffitt's testimony on the ground that it was false or moving for a mistrial would have been futile. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceedings would have been different.

Uzzle v. Fleming, supra, slip op. at 7.

For the reasons explained by the Supreme Court of Virginia, it is apparent that counsel made a sound strategic decision not to attempt to impeach Proffitt's testimony with a statement by another officer or to move for a mistrial on the ground that Proffitt was "lying." Because either action would have futile, the Supreme Court of Virginia's determination that neither constituted ineffective assistance was factually reasonable and in accord with applicable federal principles. Moody, 408 F.3d at 151 (attorney has no duty to make meritless arguments). Accordingly, the same result is compelled here. Williams, 529 U.S. at 412-13.

In claim 5(j), Uzzle contends that he was denied effective assistance of counsel when his attorney failed to object and move for a mistrial or a curative instruction based on statements made by the prosecutor during closing argument at trial and at sentencing. First, Uzzle contends that the prosecutor improperly told the jury during closing argument that Uzzle killed the victim to settle a "score" and that the crime was an execution and he was the executioner. The Supreme Court of Virginia found that this argument satisfied nether prong of the Strickland test because the record established that petitioner argued with the victim about a prior telephone conversation, "squared off" as if ready to fight the victim, shot him four or five at close range and then hit him in the head with the gun. Thus, "[c]ounsel could reasonably have determined the prosecutor's statements were based on the evidence at trial ... did not improperly appeal to 'sympathy, passion or prejudice,' ... and did not improperly express a 'personal opinion on the credibility of' the witness" such that "any objection would have been futile." Uzzle v. Fleming, supra, slip op. at 7,

citations omitted.

Uzzle next argues that counsel should have objected when the prosecutor argued that Uzzle did not provide specific information on how he learned he was implicated in the murder. The Supreme Court of Virginia again found that the Strickland requirements were not satisfied by this argument because the record "demonstrates the prosecutor's statements addressed the short amount of time petitioner said it took for him to learn he had been implicated in the victim's murder" and "contended this explanation was improbable" given that the eyewitnesses were still sequestered when Uzzle's girlfriend received his text message that he had been implicated slightly over two hours after the crime occurred. Id., slip op. at 8. The Virginia court determined that defense counsel reasonably could have determined that the prosecutor's statements did not warrant an objection, and as such Uzzle failed to demonstrate that counsel's performance was deficient. Id.

In another part of claim 5(j), Uzzle contends that counsel provided ineffective assistance by failing to object and move for a mistrial when the prosecutor stated in closing that Uzzle could see that the victim was at the crime scene, because Uzzle had testified that although he walked close to the crime scene, trees blocked his view. The Supreme Court of Virginia found that this argument failed to satisfy either prong of the Strickland analysis because the prosecutor actually argued that Uzzle could see that the decedent was at the crime scene because three witnesses testified that petitioner was there, exchanged words with the victim, and then shot him. Accordingly, counsel reasonably could have determined that the prosecutor's argument was based on the evidence presented at trial and did not warrant an objection. Id., slip op. at 9.

In the final portion of claim 5(j), Uzzle argues that his attorney provided ineffective assistance by failing to challenge the prosecutor's statement at sentencing that Uzzle had "caught

another charge and conviction for marijuana" and had received "more than enough chances." Uzzle contends that this statement was objectionable because he actually "caught his marijuana charge before he went to jail and did his time together with his first jail sentence." The Supreme Court of Virginia held that this argument failed to satisfy either portion of the Strickland analysis:

> The record, including the trial transcript, demonstrates petitioner, by his own admission, was convicted of distributing ecstacy in April 2003 and sentenced to twenty years' imprisonment with eighteen years and four months suspended, was convicted of distributing marijuana in August 2003 and sentenced to five years' imprisonment with four years and six months suspended, and was convicted of attempted possession of a firearm by a convicted felon in July 2010 and was sentenced to five years' imprisonment with four years suspended. Petitioner focuses on an isolated portion of the prosecutor's sentencing argument indicating petitioner received "an opportunity to have a second chance after getting out of prison, or jail" for the ecstacy conviction, but "g[ot] another conviction for selling marijuana, a felony." Even if petitioner was convicted of the marijuana offense while he was still incarcerated for the ecstacy offense, as petitioner contends, the prosecutor's broader point was that petitioner had been given "a second chance," "a third chance," and "even a fourth chance," but had "throw[n] them all down the drain."

Uzzle v. Fleming, supra, slip op. at 9-10. The Virginia court determined that under these circumstances, counsel reasonably could have determined that the prosecutor's statements were not improper and did not warrant an objection, and that petitioner thus had failed to demonstrate that counsel's performance was deficient. Id.

Uzzle in this federal petition fails to identify any facts that the Virginia court determined unreasonably or any controlling federal authority it misapplied. In fact, for the reasons explained by that court, counsel had no basis upon which to interpose a valid objection for any of the reasons petitioner cites in claim 5(j). Because federal law does not require counsel to make

baseless objections, <u>Moody</u>, 403 F.3d at 151, the rejection of claim 5(j) thus was both factually reasonable and in accord with controlling federal principles, and hence must be allowed to stand. <u>Williams</u>, 529 U.S. at 412-13.

In claim 5(k), Uzzle contends that counsel provided ineffective assistance by failing to object to Uzzle being cross-examined regarding a text message that was not introduced into evidence. Specifically, he argues that questions about two texts he sent to his girlfriend that contradicted his trial testimony were improper. The Supreme Court of Virginia disagreed for the following reasons:

> The Court holds that claim (5)(K) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in <u>Strickland</u>. Petitioner fails to articulate any reason why counsel would have wished to have the text message introduced into evidence or any prejudice resulting from the failure to have it admitted. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceedings would have been different.

<u>Uzzle v. Fleming</u>, <u>supra</u>, slip op. at 10.

Contrary to Uzzle's argument, the text messages received by his girlfriend were admissible as prior inconsistent statements. Petitioner testified that he spent the day of the shooting in Petersburg rather than at his home. (T. 5/31/2012 at 149) The prosecutor questioned him abut a text he sent to his girlfriend shortly before the shooting asking her where she was, and about a second text sent shortly after the shooting saying that "something crazy is going on" and advising her and his mother to leave their homes. <u>Id.</u> at 158. Virginia law required the Commonwealth to confront petitioner with the statements, and petitioner admitted making them. Under these circumstances counsel had no duty either to make a frivolous objection to the Commonwealth's questions or to seek to have the texts admitted into evidence, and his failure to

do so accordingly did not amount to ineffective assistance. Moody, 403 F.3d at 151. The

Virginia courts' rejection of the claim thus was both factually reasonable and in accord with

controlling federal principles, and the same result must obtain here. Williams, 529 U.S. at 412-

13.

In claim 5(l), Uzzle asserts that counsel was ineffective for failing to object to the

prosecutor's cross-examination of the petitioner regarding his prior convictions or to inform

petitioner of his rights under Va. Code § 19.1-269. As to the first point, the Supreme Court of

Virginia determined:

> The Court holds that this portion of claim (5)(L) satisfies neither the
> "performance" nor the "prejudice" prong of the two-part test
> enunciated in Strickland. The record, including the trial transcript,
> demonstrates petitioner admitted on direct examination that he had
> been convicted of several prior offenses, including "simple
> possession" of marijuana, thereby opening the door for the
> Commonwealth to confirm on cross-examination that this prior
> conviction was for the greater offense of possession of marijuana with
> intent to distribute. Harmon v. Commonwealth, 212 Va. 442, 445,
> 185 S.E.2d 48, 51 (1971). Thus, petitioner has failed to demonstrate
> that counsel's performance was deficient or that there is a reasonable
> probability that, but for counsel's alleged errors, the result of the
> proceedings would have been different.

Uzzle v. Fleming, supra, slip op. at 10-11. As to the second portion of the claim, where Uzzle

appears to assert that counsel was ineffective for failing to inform him that the Commonwealth was

not entitled to elicit the name and nature of his prior convictions, the Virginia court found:

> The Court holds that this portion of claim (5)(L) satisfies neither the
> "performance" nor the "prejudice" prong of the two-part test
> enunciated in Strickland. "Virginia statutory provisions and common
> law allow the Commonwealth to impeach the credibility of a
> testifying criminal defendant by asking if he has been convicted of a
> felony or a misdemeanor involving moral turpitude." Shifflett v.
> Commonwealth, 289 Va. 10, 11, 766 S.E.2d 906, 907 (2015).
> "Further, if the conviction was for perjury, the name of the offense
> may be used to impeach the defendant." Id. The record, including

the trial transcript, demonstrates counsel opted to elicit the name and nature of petitioner's prior felony convictions during direct examination in order to show that the prior convictions did not involve lying or acts of violence. Consistent with this trial strategy, counsel asked petitioner to "[t]ell the jury what you have been convicted of," then asked petitioner if he had ever been convicted of "any crime that involves any type of lying" or "any kind of violent offense." Petitioner disclosed his prior felony convictions, but inaccurately stated he had been convicted of simple marijuana possession. Counsel could not reasonably have known petitioner would respond incorrectly, thereby opening the door for the Commonwealth to elicit that petitioner was convicted of distributing marijuana. On habeas review, the "'distorting effects of hindsight' should be avoided and the habeas court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Murray v. Griffith, 243 Va. 384, 389, 416 S.E.2d 219, 221 (1992) (quoting Strickland, 446 U.S. at 689). Furthermore, given three eyewitnesses identified petitioner as the victim's killer, it is unlikely the jury's knowledge that petitioner had a prior marijuana distribution conviction, instead of a prior marijuana possession conviction, materially affected the weight of the evidence against petitioner. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceedings would have been different.

Uzzle v. Fleming, supra, slip op. at 11.

For the reasons explained by the Supreme Court of Virginia, neither portion of this claim has merit. Nothing in Virginia law gives a testifying defendant the right to misstate his criminal record without correction, and the events that gave rise to both portions of this claim arose directly from petitioner's own false testimony about his prior conviction. Counsel cannot be faulted for failing to anticipate that his sound trial strategy of eliciting Uzzle's prior offenses on direct examination would result in Uzzle providing misinformation in response. In addition, as the Virginia court observed, there is no reasonable probability that the revelation that Uzzle's marijuana conviction was for distribution rather than possession affected the jury's decision, given the fact that three eyewitnesses to the murder identified him as the perpetrator.

Accordingly, the Virginia court's rejection of this claim was factually reasonable and in accord with applicable federal principles, Strickland, supra, and the claim must likewise be denied here. Williams, 529 U.S. at 412-13.

In claim 5(m), Uzzle contends that his lawyer provided ineffective assistance by failing to question and strike a juror whose wife worked with a Commonwealth witness. The Supreme Court of Virginia found no merit to this argument for the following reasons:

> The Court holds that claim (5)(M) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates a bailiff informed the court at the conclusion of the trial's first day that the juror indicated his wife had worked with the witness; however, the juror clarified before the second day of trial that his wife instead worked for the same county school system as that witness. The record further demonstrates the juror revealed this information in the interest of "full disclosure" and reaffirmed that nothing precluded him from reaching a fair and impartial verdict. "[A] social relationship, standing alone, is no cause for disqualification," Wise v. Commonwealth, 230 Va. 322, 325, 337 S.E.2d 715, 717 (1985), and the juror clarified that no such relationship existed between his wife and the witness. Under the circumstances, counsel could reasonably have determined any objection to the juror's impartiality would have been futile as the juror's "responses to questions from the bench clearly negate[d] any danger of bias." Id. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.

Uzzle v. Fleming, supra, slip op. at 12.

For the reasons explained by the Supreme Court of Virginia, it is apparent that counsel made a sound strategic decision not to challenge the juror's impartiality. Because such an action would have futile, the Virginia court's determination that the failure to do so did not amount to ineffective assistance was factually reasonable and in accord with controlling federal principles, Moody, 408 F.3d at 151, so the same result must occur here. Williams, 529 U.S. at 412-13.

In claim 5(n), Uzzle faults his counsel for failing to include "controlling and persuasive case law" in support of his speedy trial motion at trial and on appeal. The Supreme Court of Virginia disagreed for the following reasons:

> In claim 5(N), petitioner contends he was denied the effective assistance of counsel because counsel did not cite <u>Klopfer v. North Carolina</u>, 386 U.S. 213 (1967), and <u>Price v. Commonwealth</u>, 25 Va. App. 655, 492 S.E.2d 447 (1997), in support of petitioner's motion to dismiss on constitutional and statutory speedy trial grounds.
>
> The Court holds that claim (5)(N) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in <u>Strickland</u>. Petitioner's speedy trial contentions were rejected on direct appeal, and he fails to demonstrte how citations to additional authority would have compelled a different result. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceedings would have been different.

<u>Uzzle v. Fleming</u>, <u>supra</u>, slip op. at 12.

For the reasons expressed by the Virginia court, petitioner's argument that citation to the two cases he suggests would have resulted in a finding that his rights under the Sixth Amendment or the Virginia statutes were violated is baseless. For the reasons which are throughly discussed in connection with claims 2 and 3, <u>supra</u>, petitioner had no viable speedy trial claim. As noted, counsel did object to the Commonwealth's motion to *nolle prosequi* the original charges, but the court found that good cause for that action existed. There is no reasonable probability that counsel's citation to the two cases Uzzle now suggests would have changed that determination, and the fact that counsel's speedy trial challenge was unsuccessful does not mean that his efforts were ineffective. <u>See</u> <u>United States v. Agboola</u>, 2006 WL 2521624 at *4 (D. Minn. Aug. 30, 2006) ("[C]ounsel is not 'ineffective' simply because counsel lost."). For these reasons, the denial of this claim by the Virginia courts was both factually reasonable

and in accord with controlling federal principles, <u>Strickland</u>, <u>supra</u>, and the same result must be reached here. <u>Williams</u>, 529 U.S. at 412-13

In claim 5(o), Uzzle contends that his counsel provided ineffective assistance by failing to argue prejudice in the speedy trial motion and the appeal of its denial. The Supreme Court of Virginia disagreed for the following reasons:

> The Court holds that claim (5)(O) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in <u>Strickland</u>. The issue of prejudice, in the context of petitioner's speedy trial claim, was considered and rejected on direct appeal. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceedings would have been different.

<u>Uzzle v. Fleming</u>, <u>supra</u>, slip op. at 13.

For the reasons stated by the Virginia court, Uzzle's suggestion that counsel was ineffective for failing to argue prejudice in connection with the speedy trial motion is without merit. As discussed above in Claims 2 and 3, it was correctly decided on direct appeal that Uzzle's right to a speedy trial was not violated. His argument in connection with the instant claim that he was in custody for the week between the *nolle prosequi* and his reindictment on the murder charge is simply untrue; instead, he was held during that period on a probation violation. As Uzzle had no viable speedy trial claim, counsel's failure to include a prejudice component to the argument he presented was of no consequence. Since the state court's rejection of this argument thus was factually reasonable and squarely in line with <u>Strickland</u>, <u>supra</u>, the rejection of this argument is likewise compelled here. <u>Williams</u>, 529 U.S. at 412-13.

<u>Claim 8</u>:

In his eighth claim, Uzzle contends that his right to due process was violated when a witness named Jamie Moore was allowed to testify that Uzzle was the shooter. In rejecting this

claim, the Virginia courts found as follow:

> At approximately 8:00 p.m. on August 28, 2011, Jamie Moore was watching television in his house when he heard gunshots. He looked out of his bay window and saw a black male running across his neighbor's yard. He only saw a side profile of the man. Once Moore saw that the man had a gun, he ducked down. When he looked up again, he saw the man running into the woods. His wife called 911.
>
> Moore told the police that he did not recognize the person fleeing. He said that it was black male, between the ages of twenty and thirty, approximately six feet tall, and wearing jeans and a white shirt.
>
> Later, Moore saw appellant's photograph on a local news channel's Facebook page. He saw a similar picture on the television news. Both photographs showed a full-face image of appellant. Moore did not recognize appellant as the man running away from the scene because Moore only saw a side profile of the man, whereas these pictures showed a frontal view. The police did not show Moore a photo array or lineup.
>
> On March 6, 2012, while Moore was waiting for appellant's trial to start, he watched appellant enter the courtroom from the side door. Once he saw the side profile of appellant, Moore recognized appellant as the person running from the scene. After the hearing, Moore approached the Commonwealth and told them that appellant was the person he saw running away on August 28.
>
> On May 30, 2012, the first day of the trial, [Uzzle] moved to exclude Moore's eyewitness identification testimony. The trial court concluded that the identification was not unduly suggestive. The trial court further held that even if the identification was suggestive, the out-of-court identification was reliable. [Uzzle] objected to the trial court's ruling.
>
> > [E]vidence [regarding the admissibility of out-of-court identifications] will be admitted if either (a) the identification was not unduly suggestive , or (b) the procedure was unduly suggestive, but the identification is nevertheless so reliable, in accordance with the factors noted in Biggers and Braithwaite, that there is no substantial likelihood of misidentification.
> >
> > Second, even if evidence of the out-of-court

> identification cannot be admitted, an in-court
> identification may still be made if the origin of that
> identification is independent of the inadmissible out-
> of-court identification procedure.

Hill v. Commonwealth, 2 Va. App. 683, 693, 347 S.E.2d 913, 918 (1986) (citing Neil v. Biggers, 409 U.S. 188 (1972); Mason v. Braithwaite, 432 U.S. 98 (1977)).

[Uzzle] contends "the identification process under which Moore came to identify Uzzle as the fleeing suspect was so suggestive as to give rise to substantial likelihood of irreparable misidentification." [Uzzle] points to the manner in which Moore recognized [Uzzle] to support his argument. The trial court called the case, "Commonwealth of Virginia versus Brian Uzzle," and then immediately thereafter, [Uzzle] entered the courtroom from a side door and sat next to defense counsel. [Uzzle] argues that this was not a neutral identification process and Moore's identification was not reliable.

As was emphasized in the trial court, Moore approached the Commonwealth about the identification of [Uzzle] as the man who fled the scene. The police did not approach Moore. Moreover, Moore did not see [Uzzle's] side profile until he entered the courtroom. There was nothing suggestive about the identification.

The factors for determining the reliability of identification testimony include

> the opportunity of the witness to view the criminal at
> the time of the crime, the witness' degree of attention,
> the accuracy of the witness' prior description of the
> criminal, the level of certainty demonstrated by the
> witness at the confrontation, and the length of time
> between the crime and the confrontation.

Biggers, 409 U.S. at 199-200.

Here, Moore saw a side profile of appellant out his window. Moore was about ten feet away and saw appellant for a few seconds. Moore gave a description to the police of a black male, between the ages of twenty and thirty, approximately six feet tall, and wearing jeans and a white shirt. The trial court concluded that Moore accurately described appellant. Once Moore was able to see appellant's side profile, Moore was "one hundred percent sure" that appellant was the

> man he saw running away on August 28. The trial court recognized
> that Moore had been consistent and that there were several months
> between the incident and the March 6, 2012 court date. The evidence
> supports the trial court's conclusion that Moore's identification was
> reliable. The trial court did not err in allowing Moore to testify and
> identify appellant as the person he saw run from the scene.

Uzzle v. Commonwealth, supra, slip op. at 2-3.

Petitioner fails to demonstrate that the foregoing holding reflected an unreasonable

determination of the facts or a misapplication of controlling federal principles. To the contrary,

the Virginia Court of Appeals' conclusion that witness Moore's identification of the petitioner

was reliable was neither contrary to nor and unreasonable application of the factors enunciated in

Biggers, 409 U.S. at 199-200. See Manson, 432 U.S. at 98 ("Reliability is the linchpin is the

linchpin in determining the admissibility of identification testimony...."). Particularly on this

record, where Uzzle was identified by multiple witnesses in addition to Moore, his DNA was

found at the crime scene, and he exhibited consciousness of guilt by fleeing and using a false

alibi, it is apparent that the admission of Moore's testimony caused him to suffer no prejudice.

Accordingly, the state court's determination that petitioner's right to due process was not

violated by Moore's in-court identification was neither contrary to nor an unreasonable

application of federal law, and the same result must pertain here. Williams, 529 U.S. at 412-13.

### VI. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss this petition will be granted,

and the petition will be dismissed with prejudice. Respondent's Motion for Leave to File Excess

Pages will be granted. An appropriate Order and judgment shall issue.

Entered this ___/5th___ day of ___August___ 2017.

Alexandria, Virginia

/s/
James C. Cacheris
United States District Judge

40